**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **CHRISTOPHER LEE**<br>2938 Rosalind Avenue<br>Baltimore, Maryland 21215<br>*Resident of Baltimore City* | Collective/Class Action Claims |
| and | |
| **LADRIAN TAYLOR**<br>4412 Franconia Drive<br>Apt. A<br>Baltimore, Maryland 21206<br>*Resident of Baltimore City* | <u>Jury Trial Requested</u> |
| Plaintiffs, | |
| ***Individually and on Behalf of All***<br>***Similarly Situated Employees*** | |
| v. | |
| **JLN CONSTRUCTION SERVICES, LLC**<br>1506 Joh Avenue<br>Suite 174<br>Halethorpe, Maryland 21227 | Civil Action No.: |
| Serve:  Nnamdi C. Iwuoha<br>          Resident Agent<br>          1506 Joh Avenue<br>          Suite 174<br>          Halethorpe, Maryland 21227 | |
| and | |
| **NNAMDI C. IWUOHA**<br>1506 Joh Avenue<br>Suite 174<br>Halethorpe, Maryland 21227 | |
| Defendants. | |

## COLLECTIVE AND CLASS COMPLAINT FOR WAGES OWED

CHRISTOPHER LEE and LADRIAN TAYLOR, Plaintiffs, individually and on behalf of all similarly situated employees, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit their Complaint against JLN CONSTRUCTION SERVICES, LLC and NNAMDI C. IWUOHA, Defendants, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendants specialize in general construction and contracting services. Defendants employ laborers and foremen (also referred to as "superintendents") to meet their business needs. Defendants hired Plaintiffs and other similarly situated employees to work as laborers and/or foremen. Plaintiffs and others similarly situated were hourly employees.

Plaintiffs and others similarly situated performed their work at Defendants' clients' construction sites. Their duties consisted primarily of manual labor. This included site and concrete construction, the installation of doors and windows and making HVAC improvements. Plaintiffs and others similarly situated could also be responsible for various types of drywall and demolition work.

Plaintiffs and other similarly situated employees routinely worked over forty (40) hours a week. Understaffing was the primary factor requiring overtime. Defendants routinely failed to staff a sufficient number of employees to complete their construction projects. This resulted in Plaintiffs and other similarly situated employees having to work through lunch and outside of their regular working hours. They had to work overtime in order to complete their assignments on schedule.

Other factors contributed to Plaintiffs and other laborers and foremen having to work overtime. They were often required to ensure the construction sites were cleared of debris on a daily basis. This would require Plaintiffs to pick up trash and dispose of other waste materials after the regular work was done. This task had the effect of regularly extending Plaintiffs' and other similarly situated employees' workday and resulted in Plaintiffs and other similarly situated employees working overtime hours many weeks.

Additionally, before proceeding to their job sites, Plaintiffs and others similarly situated were frequently required to pick up their supplies from Defendants' vendors. Once obtained, Plaintiffs and others similarly situated had to ensure the supplies and equipment were loaded properly on their trucks. This process was often very time consuming and caused Plaintiffs and other similarly situated employees to work overtime regularly off the clock.

Defendants consistently failed to pay their employees correctly for overtime. Plaintiffs' paystubs make this clear. They did not always receive time and a half (1.5) their regular rate of pay for all hours worked over forty (40) each week. During certain weeks, Plaintiffs and others similarly situated did not receive any overtime pay. During other weeks, they only received overtime pay for a portion of their overtime hours. At other times, Defendants simply would not

pay Plaintiffs and others similarly situated their correct overtime rate. This was routine throughout their employment.

Defendants also failed to pay Plaintiffs and others similarly situated for all of the tasks they performed. They were only paid for the work they actually completed on-site. However, as discussed above, Plaintiffs regularly performed work prior to their arrival at the job sites. All of this work is legally compensable.

Through their unlawful practices, Defendants evaded the payment of wages owed to Plaintiffs and others similarly situated. Defendants' practices were direct violations of the FLSA, MWHL and the MWPCL. All of Defendants' laborers and foremen were affected by these practices. Defendants continue to engage in their unlawful activity.

## THE PARTIES

1.      Plaintiff, Christopher Lee (hereinafter, "Lee"), is an adult resident of Baltimore City, Maryland.

2.      Plaintiff, Ladrian Taylor (hereinafter, "Taylor"), is an adult resident of Baltimore City, Maryland.

3.      Defendant, JLN Construction Services, LLC (hereinafter, "JLN"), is an incorporated for-profit business.

4.      JLN is licensed to operate in the State of Maryland.

5.      JLN's principal office is in Baltimore County, Maryland.

6.      JLN specializes in general construction and design-build projects. The company performs masonry, finishing, demolition and installation work.

7.      JLN serves both private clients and government agencies.

8.      To service its clients, JLN employs a wide range of individuals.  This includes general laborers, architects, engineers, technicians, project managers and foremen (also referred to as superintendents).

9.      Defendant, Nnamdi C. Iwuoha (hereinafter, "Iwuoha"), is an adult resident of Baltimore County.

10.      Iwuoha is the owner of JLN.[1]

11.      At all times relevant, Iwuoha was heavily involved in the day-to-day operations of JLN.

12.      Iwuoha exercised direct control over the terms of employment for JLN's employees.

13.      Iwuoha had significant financial interest in the revenues generated by JLN.

14.      Defendants' annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).   As such, Defendants are subject to the FLSA, MWHL and the MWPCL.

15.      Due to the nature of their business, Defendants are subject to the FLSA, MWHL and the MWPCL.  Defendants' business meets the definition of a retail or service establishment.

16.      Based on the duties Plaintiffs performed, at all times relevant to this Complaint, Plaintiffs were engaged in interstate commerce.

17.      Plaintiffs worked for Defendants who, at all times throughout Plaintiffs' employment, met the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

---

[1] Any reference to Defendant JLN shall include its corporate officers and all those empowered to act as agents of the corporation either, explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency.  To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

18.     At all times relevant, Plaintiffs and others similarly situated worked as non-exempt employees for Defendants.

19.     For the duration of their employment, Plaintiffs and other similarly situated employees were paid an hourly wage.

20.     The tasks assigned to Plaintiffs and all others similarly situated do not satisfy the duties tests contained within any of the exemptions specified in the FLSA, MWHL, or the MWPCL.

21.     From May 7, 2016 to May 9, 2017, Plaintiff Lee was employed as a laborer with Defendants.

22.     From July 2016 to July 7, 2017, Plaintiff Taylor was employed with Defendants. He was initially hired as a laborer and was promoted to foreman in December 2016.

23.     At all times relevant to this Complaint, Defendants controlled the administration of their business and set employee schedules, including the schedules of Plaintiffs and other similarly situated employees.

24.     Defendants possessed and exercised the authority to schedule and control the hours worked by Plaintiffs and other similarly situated employees.

25.     Defendants had and exercised the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

26.     Defendants had and exercised the power and authority to change the course of Plaintiffs' and other similarly situated employees' duties.

27.     Plaintiffs and all others similarly situated recognized Defendants' authority and obeyed Defendants' instructions.

28.     Defendants made all decisions relating to Plaintiffs' and other similarly situated employees' rates and method of pay.

**JURISDICTION AND VENUE**

29.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C.  § 1331, as this matter presents a federal question.

30.     Discretionary supplemental jurisdiction of Plaintiffs' Maryland state law claims is provided by 28 U.S.C. § 1367 (a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts on which Plaintiffs' federal claims are based.

31.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. § 1367(c).

32.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the majority of the unlawful acts central to this matter occurred within the State of Maryland.

33.     This Honorable Court has personal jurisdiction over JLN, as it is a corporation which (i) is incorporated under the laws of Maryland and (ii) conducts sufficient business within the state of Maryland such as to constitute a submission to its laws.

34.     This Honorable Court has personal jurisdiction over Iwuoha, as he is a resident of Maryland.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

35.     Defendant JLN is a non-residential construction and contracting company. Defendant Iwuoha is the owner of JLN (hereinafter, collectively referred to as "Defendants").

36.     Defendants cater to a range of clients, including government agencies, schools, hospitals and private corporations.

37.     To service is clients, Defendants employ laborers and foremen to perform construction work throughout various areas of Maryland, Virginia and Washington D.C.

38.     Plaintiffs and other laborers and foreman were paid an hourly rate for all work they completed.

39.     On May 7, 2016, 2016, Plaintiff Lee was hired by Defendants' project manager Tim Keegan (hereinafter "Keegan"). Plaintiff Lee held the position of laborer for the entirety of his employment. Lee was terminated on May 9, 2017.

40.     On July 2016, Plaintiff Taylor was hired by Defendants' project manager Brian Toelle (hereinafter, "Toelle"). Plaintiff Taylor was originally hired to work as a laborer. In December 2016, Plaintiff Taylor was promoted to foreman ("superintendent"), a position he held until his termination on July 7, 2017.

41.     Plaintiffs' and other similarly situated employees' duties were primarily manual labor. They were responsible for remodeling, plumbing, masonry, painting and carpentry work. They frequently removed and/or installed windows and they were responsible for digging and covering manholes for sewers and drainage outlets on some jobs.

42.     Plaintiffs' and other similarly situated employees' assignments also included repairing walls and ceilings, installing HVAC equipment and the removal of snow and debris.

43.     In addition to their regular tasks, Plaintiffs and others similarly situated were also charged with monitoring the work of subcontractors.  This was to ensure the subcontractors complied with Defendants' safety and quality standards.

44.     Depending on the job, Plaintiffs and others similarly situated could be required to supervise a crew of as many as twenty (20) workers.  The crews were hired by Defendants to work on various projects.

45.     As foreman, Plaintiff Taylor was frequently assigned to supervise crews at various work sites.  If Taylor or another foreman was absent, Plaintiff Lee and/or other laborers were responsible for supervising the crews.

46.     Even while supervising others, Plaintiffs and other similarly situated employees worked alongside the crew of workers, performing the same tasks.  All of these tasks consisted of manual labor.

47.     Plaintiffs and others similarly situated worked on a wide range of labor and construction projects.  Their tasks were performed at various work sites. Defendants had contracts with Baltimore City and Prince George's County Schools, Baltimore Washington International (BWI) Airport and the MARC Train.

48.     Defendants also performed work for private corporate clients.  Many of these clients maintained large office buildings and/or private dwellings.  Plaintiffs and others similarly situated received their regularly hourly rate when performing this type of work.  Plaintiffs' regular hourly rates ranged anywhere from eleven dollars ($11.00) to seventeen dollars ($17.00) per hour. Other laborers and foreman were paid similar rates.

49.     Jobs were primarily assigned by Defendants' project managers.  Plaintiffs' and other similarly situated employees' assignments were distributed via text message or in person at Defendants' office.

50.     The duration of each project varied and could range anywhere from a few days to several months.

51.     Plaintiffs and other similarly situated employees had no say regarding the projects they were given.

52.     Plaintiffs and others similarly situated had no discretion regarding the performance of their tasks.

53.     Defendants' project managers directed Plaintiffs' and other similarly situated employees' work.

54.     Defendants and their agents made all decisions in regard to Plaintiffs' assignments.

55.     Plaintiffs and others similarly situated lacked any significant decision making authority; they were required to contact their supervisors when any major issues arose.

56.     Plaintiffs and others similarly situated lacked hiring and firing authority.

57.     Plaintiffs and others similarly situated lacked the authority to change Defendants' policies.

58.      Plaintiffs and others similarly situated did not make any recommendations in regard to Defendants' procedures.

59.     Plaintiffs' and other similarly situated employees' work did not consist of any complex analysis.

60.     Plaintiffs and others similarly situated were not required to write any reports.

61.     Plaintiffs and other similarly situated employees did not interpret any information.

62. Plaintiffs' and other similarly situated employees' daily tasks did not require specialized training or advanced knowledge.

63. Plaintiffs performed their duties to the extent required by Defendants.

64. Plaintiffs and others similarly situated satisfied the requirements of their jobs and adequately performed their duties to benefit Defendants, as well as Defendants' customers.

65. Plaintiffs and other similarly situated employees worked varying shifts, depending on the type of project they were assigned. Plaintiffs and other similarly situated employees could be assigned to work during the day or at night as needed.

66. When scheduled to work during the day, Plaintiffs and similarly situated employees were routinely scheduled to start work at approximately 5:00 a.m. They would typically work until about 3:00 p.m. Even when assigned to daytime projects, Plaintiffs and other laborers and foremen could regularly work as late as midnight.

67. When scheduled to work at night, Plaintiffs and other similarly situated employees were typically scheduled to work from 6:00 p.m. to 6:00 a.m. They were routinely scheduled to work twelve (12) hour shifts but it was common for them to work even more hours.

68. Due to the nature of their assignments, Plaintiffs and other similarly situated employees regularly worked as many as fifty (50) to sixty-five (65) hours per week, sometimes more.

69. Plaintiffs and other laborers and foremen were required to track their hours on timesheets. Separate timesheets were kept at all of Defendants' job sites.

70. Plaintiffs and others similarly situated were required to sign in and out on the timesheets upon their arrival and departure at each job site.

71.     Plaintiffs and other similarly situated employees were supposed to be paid in accordance with the hours recorded on their timesheets.

72.     Plaintiffs and other similarly situated employees regularly worked over forty (40) hours each week.

73.     There were numerous conditions that resulted in Plaintiffs and other laborers and foremen having to regularly work overtime.

74.     Defendants had multiple projects that were ongoing during the relevant period. Each project was supposed to have a designated number of workers. Defendants regularly understaffed these projects presumably in order to avoid paying additional employees.

75.     Many of the projects had deadlines for completion. Defendants required that all projects be completed by the deadline. Due to regular understaffing issues, Plaintiffs and other similarly situated employees were required to work long hours to ensure projects were completed as scheduled. This resulted in Plaintiffs and others similarly situated regularly working overtime.

76.     Other tasks further contributed to the overtime Plaintiffs and other laborers and foremen worked. When they were assigned to construction projects at public schools, which often happened, they were required to open and close the school. They were the first to arrive at the school each morning and the last to leave. They could not in fact leave until the school's security system had been armed by school system safety officials.

77.     Due to these requirements, whenever Plaintiffs and others similarly situated were assigned construction projects at schools, overtime was automatically incorporated in their schedules. They regularly worked on these types of projects throughout their employment. This factor contributed to the overtime hours Plaintiffs and others similarly situated consistently worked.

78.     Other factors contributed to Plaintiffs and others similarly situated regularly working overtime.  Before proceeding to a job site, Defendants often required Plaintiffs and others similarly situated to pick up materials and supplies from vendors. They were sometimes provided with a work van or a small truck to pick up the materials but the majority of the time, they were required to use their personal vehicles.

79.     Defendants' project managers would coordinate with vendors in regard to all supplies and equipment needed for a project.  Plaintiffs and others similarly situated were required to travel to the vendor's location and collect the needed materials.  This was a regular practice in the mornings and was done prior to signing in on the timesheets.

80.     Plaintiffs were required to pick up materials and supplies almost every other day. This process included loading the materials at the vendor's location and unloading at the job site. This process could take between two (2) to three (3) hours or more each day to complete. The completion of this task caused Plaintiffs and others similarly situated to work overtime regularly as this process lasted longer than expected.

81.     Upon arrival at the job sites, subcontractors were supposed to help Plaintiffs and others similarly situated with unloading the materials.  However, understaffing often resulted in Plaintiffs not receiving sufficient help.  The lack of help further contributed to the overtime Plaintiffs and others similarly situated regularly worked.

82.     Plaintiffs and others similarly situated were also required to put away their materials and equipment at the end of each workday.  All of these supplies had to be loaded back into their trucks.   Plaintiffs and others similarly situated had to ensure that Defendants' subcontractors loaded their materials into their trucks as well.  These were additional tasks that

Plaintiffs and others similarly situated had to complete before their workday could end. This had the effect of regularly extending their workday.

83.     Depending on the demands of a particular job, Plaintiffs and others similarly situated could also be required to ensure their work sites were cleared of all debris at the end of the day. This also had to be done before they could leave the site. This primarily involved picking up litter and disposing of trash and unwanted materials. These additional tasks contributed to the number of overtime hours Plaintiffs and other similarly situated employees worked each week.

84.     Additionally, if there was a shortage of any materials necessary to complete a project, Plaintiffs and others similarly situated were also required to obtain those additional supplies throughout their workday. Plaintiffs and other laborers and foremen had to get approval from Defendants' upper management officials before purchasing the additional supplies.

85.     It was routine for Plaintiffs and others similarly situated to discover the need for additional supplies each week. As a result, they had to consistently seek approval from Defendants' agents. This became a regular part of Plaintiffs' and other laborers' and foremen's employment. The regularity of this practice contributed to the overtime they worked.

86.     Plaintiffs were not always compensated for the time spent purchasing materials. They were also not paid for the time they spent collecting materials from Defendants' vendors. Defendants instructed Plaintiffs and others similarly situated to only record their hours to reflect when they arrived at a job site. Consequently, they were not compensated for the work they completed off-site. Completion of this work caused Plaintiffs and others similarly situated to work overtime regularly.

87.     Plaintiffs' regular schedules were to also include a designated lunch break. However, due to their demanding workload, Plaintiffs and others similarly situated were often

unable to take their breaks. Due to strict deadlines associated with the construction projects, in addition to chronic understaffing, Plaintiffs and other similarly situated employees were frequently required to work through their scheduled breaks. This further contributed to the excessive overtime Plaintiffs and others similarly situated were required to work.

88.     Defendants were well aware that Plaintiffs and other laborers and foremen rarely, if ever, took regular lunch breaks.

89.     Defendants were also well aware of the consistent overtime Plaintiffs and other similarly situated employees were required to work.

90.     Defendants controlled the work performed by Plaintiffs.

91.     Defendants permitted and/or required Plaintiffs to work more than forty (40) hours a week.

92.     There is no bona fide dispute that Plaintiffs and others similarly situated should have been paid overtime wages for all hours worked over forty (40) in a week.

93.     Defendants routinely failed to make proper overtime payments at a rate of time and a half (1.5) for Plaintiffs' overtime work.

94.     Plaintiffs and others similarly situated were paid in a variety of unlawful ways. At times, Defendants would only pay Plaintiffs and others similarly situated for some of their overtime hours not all They would receive the remainder of their overtime hours in straight time payments. Plaintiffs' paystubs make this clear. *See Exhibit A*.

95.     The overtime rate on Plaintiffs' and other similarly situated employees' paychecks did not always equal time and a half (1.5) their regular rate of pay. Since they worked on a variety of scale jobs, Plaintiffs and other laborers and foreman frequently earned differing hourly pay rates during the same week. Defendants were required to pay Plaintiffs and other similarly situated

employees time and a half (1.5) their average rate of pay each week.  Defendants regularly failed to do so.[2]  *See Exhibit A.*

96.     There were also times when Plaintiffs and others similarly situated failed to receive any overtime premium.  They were denied overtime compensation altogether for multiple hours of work.[3]  At other times as noted, Plaintiffs and others similarly situated were simply not paid at all for some hours worked off the clock.

97.     In bad faith, Defendants withheld the overtime wages owed to Plaintiffs and other similarly situated employees.

98.     Plaintiffs and others similarly situated consistently complained about their missing wages. Defendants simply ignored these complaints.  Defendants refused to properly compensate Plaintiffs and other laborers and foreman for all hours worked.

99.     Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and all other available relief through this Complaint.

---

[2] For the period of November 20, 2016 to December 3, 2016, Plaintiff Lee was paid two thousand forty-three dollars and ninety cents ($2,043.90) for one hundred and thirteen point five (113.5) hours of work. Excluding the eight (8) hours that counted as holiday pay, he received overtime compensation for some of his overtime hours.  His overtime rate was twenty-four dollars ($24.00).  However, his regular rate for the period was eighteen dollars and nineteen cents ($18.19).  Therefore, his overtime rate should have been twenty-seven dollars and twenty-nine cents ($27.29). Plaintiff Lee should have been paid this rate for the twenty-five and a half (25.5) overtime hours he worked.  Instead, he only received compensation for working eighteen and a half (18.5) hours at a pay rate of twenty-four ($24.00) per hour.  He was shorted two hundred and fifty-one dollars and ninety cents ($251.90) of overtime pay.  These types of shortages were common throughout Plaintiffs' and other similarly situated employees' employment.

[3] For the pay period of February 26, 2017 to March 11, 2017, Plaintiff Taylor worked ninety-nine point five (99.5) hours.  Taylor was only paid fourteen dollars ($14.00) per hour for all hours worked.  He should have been paid his full overtime rate of twenty-one dollars ($21.00) per hour for the nineteen and a half (19.5) overtime hours he worked. For this two week pay period, Taylor was shorted one hundred and thirty-six dollars and fifty cents ($136.50).

## FLSA COLLECTIVE ACTION ALLEGATIONS

100. Plaintiffs and other similarly situated employees work or worked as laborers and foremen for Defendants.

101. The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) within a workweek.

102. Defendants knew that Plaintiffs and similarly situated employees typically worked over forty (40) hours per week.

103. Defendants permitted and/or required Plaintiffs and other similarly situated employees to work more than forty (40) hours per week.

104. Defendants knew or should have known that Plaintiffs and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

105. Defendants denied Plaintiffs and other similarly situated employees proper compensation for all hours worked.

106. Plaintiffs and others similarly situated with the employer did not receive proper overtime payments for all times when they worked in excess of forty (40) hours in a week.

107. Pursuant to the FLSA, Plaintiffs commence this collective action against Defendants on behalf of themselves and all those similarly situated.

108. Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek.

109. Plaintiffs make these same demands on behalf of all members of the putative collective class.

110.     Plaintiffs consent to be party plaintiffs in this matter.  Plaintiffs' consent forms are attached to this Complaint as *Exhibits B and C.*

111.     It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

112.     There are similarly situated current and former employees of Defendants that have been harmed by Defendants' common scheme to underpay their employees and violate the FLSA.

113.     These similarly situated persons are known to Defendants or are readily identifiable through Defendants' records.

114.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

115.     Plaintiffs bring this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other current and former employees that served as hourly employees for Defendants and were subject to the following practices and policies:

116.     Denial of overtime wages under MWHL for all hours worked over forty (40) in a single workweek; and

117.     Denial of all wages owed to Plaintiffs and other similarly situated employees at the termination of their employment, in violation of the MWPCL.

118.     These similarly situated employees held various titles, including laborer, foreman (also known as superintendent) and other titles commonly associated with construction and remodeling work.  All were paid an hourly wage.

119.     The classes Plaintiffs seek to represent are defined as:

*MWHL Class*

> All individuals who are or were employed by Defendants as hourly employees who performed their duties, in whole or in part, at Defendants' clients' job sites for any period ranging from three (3) years prior to the filing of the instant Complaint to the present and who were not paid all their overtime wages for all hours worked over forty (40) in a workweek in violation of the MWHL and thus did not receive proper wages for all hours worked.

*MWPCL Class*

> All individuals who were, but are no longer, employed by Defendants as hourly employees who performed their duties, in whole or in part, at Defendants' clients' job sites for any period of time ranging from three (3) years prior to the filing of the instant Complaint to the present and who were not paid their regular wages for all hours worked and were not paid all their overtime wages for all hours worked over forty (40) in a workweek in violation of MWHL and thus did not receive all wages owed to them before the termination of their employment.

120.    *Numerosity:* The individuals in the classes are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, the classes include dozens of employees who are readily identifiable through Defendants' pay records. Defendants service hundreds of clients through its hourly employees. The sheer volume of Defendants' business required Defendants to employ a large number of laborers, foremen/superintendents and employees that performed similar duties at all times. Consequently, numerosity exists.

121.    *Commonality:* There are questions of law and fact common to the classes. Among the common questions of law and fact applicable to Plaintiffs and the classes are:

> i.  Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendants' common policy and practice of not paying them overtime and/or not

paying the proper overtime premium of time and a half (1.5) for all
hours worked over (40) hours per week;

ii.    Whether Defendants employed the MWHL Class within the meaning of
MWHL;

iii.   Whether Defendants violated MWHL by failing to pay Plaintiffs and
the MWHL Class all their overtime compensation for all hours worked
in excess of forty (40) hours per workweek;

iv.    Whether Defendants' violations of MWHL were willful;

v.     Whether Defendants employed the MWPCL Class within the meaning
of the MWPCL;

vi.    Whether Defendants failed to provide Plaintiffs and other members of
the MWPCL Class with all wages due at the time their employment
ended, in violation of the MWPCL;

vii.   Whether Defendants' violations of the MWPCL were willful; and

viii.  Whether Defendants are liable for damages claimed herein, including
but not limited to, compensatory, liquidated or treble, statutory, interest,
costs and attorneys' fees.

122.  *Typicality:* Plaintiffs' claims are typical of those of the Class members. Each and
every class member of both the MWHL Class and the MWPCL Class worked as an hourly
employee for Defendants on various construction jobs.  Each and every MWHL Class member
was required to work over forty (40) hours per workweek during the course of their employment.
Every member of the MWPCL Class failed to receive all wages owed to them at the end of their
employment.  Each member of both classes performed work on-site at Defendants' clients' job

sites. As a result, each and every class member suffered the same or similar harm. This was due to Defendants' failure to pay overtime wages for all hours worked in excess of forty (40) hours per workweek and the subsequent failure to pay Plaintiffs and other members of the MWPCL Class all wages owed to them at the conclusion of their employment. This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

123. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the classes. They seek the same recovery as the classes, predicated upon the same violations of the law and the same damage theory. Plaintiffs have also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the classes.

124. *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one (1) set of facts. This is based on Defendants' failure to pay all overtime wages as required by MWHL and their subsequent failure to pay all wages due at the end of an individual's employment as required by the MWPCL. Similarly, the damages are eminently certifiable in that Defendants' records will provide the amount and frequency each class member was paid. The amount of time each class member worked is also available through Defendants' records.

125. This action is maintainable as a class action. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes. This would establish incompatible standards of conduct for Defendants. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources.

126.    Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendants JLN Construction Services, LLC and Nnamdi C. Iwuoha*

**Count I.**  *Violation of the FLSA: Failure to pay overtime wages to Plaintiffs and all members of the collective Class who, during the course of this matter, opt-in to the suit by submitting their consent forms to become Party Plaintiffs.*

127.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

128.    Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for all hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

129.    As described above, Plaintiffs have not received from Defendants compensation reflecting the prescribed overtime wage rate for additional hours worked in excess of forty (40) in a week.

130.    Defendants willfully and intentionally failed to compensate Plaintiffs for all the overtime hours they worked.

131.     There is no bona fide dispute that Plaintiffs are owed additional overtime wages for work performed for Defendants.

132.    All members of the putative Collective are similarly situated to Plaintiffs, and have suffered the same and/or similar harm resulting from the same policies and practices complained of in this Complaint.

133.    Under the FLSA, Plaintiffs and all members of the Collective are entitled to additional wages from Defendants to compensate them for hours worked in a workweek in excess

of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' and each member of the Collective's regular hourly wage rate.

**Count II.** *Violation of MWHL: Failure to pay overtime wages to Plaintiffs, all those appropriately joined in this matter, and All Members of the MWHL Class, to be certified by motion during the course of this matter.*

134.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

135.    Pursuant to MWHL, Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

136.    Furthermore, pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

137.    Plaintiffs have not received compensation from Defendants reflecting the prescribed overtime wage rate for all hours worked in excess of forty (40) in a week.

138.    Defendants willfully and intentionally refused to compensate Plaintiffs for all the overtime hours they worked.

139.    There is no bona fide dispute that Plaintiffs are owed additional overtime wages for the work they performed for Defendants.

140.    All members of the MWHL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

141.    Under MWHL, Plaintiffs and members of the MWHL Class are entitled to additional wages from Defendants for additional overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' and each MWHL Class member's regular hourly rate.

**Count III.** *Violation of the MWCPL: Failure to pay wages owed at or before the termination of their employment to Plaintiffs, all those appropriately joined in this matter, and all members of the MWPCL Class, to be certified by motion during the course of this matter.*

142.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

143.     Plaintiffs are entitled to wages under the MWPCL, Md. Code Ann., Lab. & Empl. §§3-501 *et. seq.,* which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid their wages.

144.     Plaintiffs have not received compensation from Defendants for all wages owed for work performed before the termination of their employment in accordance with §3-505(a).  This is specific to Defendants' failure to pay Plaintiffs overtime for all hours worked over forty (40) in a workweek.  Similarly, Defendants failed to compensate the members of the MWPCL Class correctly by paying them in the same manner.

145.     Defendants willfully and intentionally withheld from Plaintiffs and all members of the MWPCL Class the wages owed to them and continued to violate the MWPCL, even after Plaintiffs and others informed Defendants of the violation.

146.     All members of the MWPCL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

147.     Under the MWPCL, there is no bona fide dispute that Plaintiffs and all members of the MWPCL Class are owed additional wages for work performed while employed by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated pray for

the following relief:

a)    In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b)    In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a class action on behalf of Plaintiffs and all members of the proposed classes;

c)    Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

d)    Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for both the FLSA collective class and the Maryland state law classes;

e)    Judgment against Defendants for their failure to pay Plaintiffs, those similarly situated and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

f)    Judgment against Defendants for their failure to pay Plaintiffs, the members of the MWHL Class and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

g)    Judgment against Defendants for their failure to pay Plaintiffs, the members of the MWPCL Class and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

h)    Judgment against Defendants and classifying its conduct as willful and not in good faith;

i)    Judgment against Defendants and classifying Plaintiffs and the classes as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j)    An award against Defendants for the amount of unpaid overtime wages owed to Plaintiffs, members of the Collective, members of the MWHL Class and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and other similarly situated employees' respective regular hourly rate for all overtime hours worked;

k)      An award against Defendants for the amount of unpaid wages owed to Plaintiffs, members of the MWPCL Class and all those appropriately joined to this matter calculated at Plaintiffs' and other similarly situated employees' respective regular hourly rate for all unpaid hours worked under forty (40) in a given workweek;

l)      An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs, members of the collective, members of the classes, and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

m)      An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendants;

n)      Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

o)      All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on their behalf and on behalf of those similarly situated.

Respectfully submitted,


*/s/ George E. Swegman*
George E. Swegman, Esq. (#19444)
*gswegman@nicholllaw.com*
Benjamin L. Davis, Esq. (#29774)
*bdavis@nicholllaw.com*
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*