## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHRISTOPHER LEE, *et al.*,

      Plaintiffs,

         v.

JLN CONSTRUCTION SERVICES, LLC,
  *et al.*,

      Defendants.

Civil Action No. RDB-17-2765

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Plaintiffs Christopher Lee ("Lee") and Ladrian Taylor ("Taylor") (collectively, "Plaintiffs"), on behalf of themselves and other similarly situated employees, bring this action against their former employer Defendant JLN Construction Services, LLC ("JLN"), owned by Defendant Nnamdi C. Iwuoha ("Iwuoha") (collectively, "Defendants"), alleging failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.* ("MWPCL"). (Compl., ECF No. 1.) Currently pending before this Court is Plaintiffs' Motion for Conditional Certification to Facilitate Identification and Notification of Similarly Situated Employees under the Fair Labor Standards Act. (ECF No. 9.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Plaintiffs' Motion for Conditional

Certification to Facilitate Identification and Notification of Similarly Situated Employees (ECF No. 9) is GRANTED.

## BACKGROUND

Defendant JLN Construction Services, LLC ("JLN") is a general contractor that provides construction services for both private and public construction projects throughout Maryland.[1] (Iwuoha Aff., ECF No. 14-1 at ¶ 4.) Defendant Nnamdi C. Iwuoha is the president of JLN. (*Id.* at ¶ 2.) In order to complete its projects, JLN employs laborers and foremen to perform masonry, finishing, demolition and installation work. (Compl., ECF No. 1 at ¶ 6.) Both laborers and foremen are responsible for manual labor including "remodeling, plumbing, masonry, painting and carpentry work," "remov[ing] and/or install[ing] windows," "digging and covering manholes for sewers and drainage outlets on some jobs," and "repairing walls and ceilings, installing HVAC equipment and the removal of snow and debris." (*Id.* at ¶¶ 41-42.) Foremen are also frequently tasked with supervising crews at various work sites. (*Id.* at ¶ 45.) If a foreman is absent, however, a laborer is responsible for supervising the crews. (*Id.*)

JLN's laborers' and foremen's salaries vary depending on a few factors. First, laborers and foremen who work on public projects are subject to prevailing wage laws[2] while those who work on private projects are paid under a different, established rate. (ECF No. 14-1 at ¶¶ 8, 12.) Second, salaries for employees subject to prevailing wage laws depend on the

---

[1] JLN also holds certifications as a Minority Business Enterprise, Disadvantaged Business Enterprise, Small Business Enterprise or Local Disadvantaged Business Enterprise with various agencies throughout Maryland, Delaware, and Washington, D.C. (ECF No. 14-1 at ¶ 5.)

[2] In 1931, Congress passed the Davis-Bacon Act, 40 U.S.C. §§ 276(a), *et seq.*, which established the federal prevailing wage laws and upon which most states have patterned their own state prevailing wage laws. *Barnes v. Comm'r of Labor & Industry*, 45 Md. App. 396, 403 (Md. 1980). Prevailing wage laws regulate, among other matters, hours of labor, rates of pay, conditions of employment, and obligations of employers.

employees' specific laborer subcategories, which can vary from project to project or even within a single project. (*Id.* at ¶ 9.) Because an employee's overtime pay rate is based on the employee's regular pay rate, an employee's overtime pay rate also depends on whether an employee is on a public or private project, and if on a public project, his or her laborer category.

Christopher Lee began working for JLN on May 7, 2016 as a laborer. (Lee Aff., ECF No. 9-2 at ¶ 5.) Ladrian Taylor began working for JNC also as a laborer in July of 2016, and was promoted to a foreman in December of 2016. (Taylor Aff., ECF No. 9-3 at ¶ 5.) Their regular hourly rates ranged from sixteen dollars ($16.00) to thirty dollars ($30.00) per hour depending on the above described factors. (ECF Nos. 9-2 at ¶ 9, 9-3 at ¶ 9.) Plaintiffs and other similarly situated employees were assigned to specific projects primarily by project managers. (ECF No. 1 at ¶ 49.) The projects lasted from a few days to several months, and different projects required different shifts during the day or night. (*Id.* at ¶¶ 50, 65.) An average day shift was from 5:00 a.m. to 3:00 p.m. and an average night shift was from 6:00 p.m. to 6:00 a.m. (ECF Nos. 9-2 at ¶ 10, 9-3 at ¶ 10.) Plaintiffs claim that they and other similarly situated employees regularly worked as many as fifty (50) to sixty-five (65) hours per week, and sometimes more. (ECF Nos. 9-2 at ¶ 10, 9-3 at ¶ 10.) They kept track of their hours on timesheets kept at the specific job sites. (ECF Nos. 9-2 at ¶ 19, 9-3 at ¶ 19.)

Plaintiffs assert that they worked over forty hours per week for several reasons. First, they assert that Defendants "regularly understaffed" projects and accordingly Plaintiffs had to work overtime to ensure projects were completed on time. (ECF Nos. 9-2 at ¶¶ 11-12, 9-3 at ¶¶ 11-12.) Second, laborers and foremen had to put away materials and equipment at the

end of the day and sometimes also ensure that the worksites were cleared of debris. (ECF Nos. 9-2 at ¶¶ 14, 17, 9-3 at ¶¶ 14, 17.) Third, Plaintiffs assert that they were often required to work through lunch and, if there was a shortage of any necessary supplies, purchase additional materials throughout the day. (ECF Nos. 9-2 at ¶¶ 15, 18, 9-3 at ¶¶ 15, 18.)

Plaintiffs also claim that they worked over forty hours per week because they were required to perform work prior to arriving on the job site. (ECF Nos. 9-2 at ¶¶ 19, 20, 9-3 at ¶¶ 19, 20.) They assert that almost daily they were required to purchase and pickup materials and supplies from vendors, which could take between two and three hours a day. (ECF Nos. 9-2 at ¶ 20, 9-3 at ¶ 20.) They further assert, however, that Defendants had a "company-wide policy" of instructing employees to only record work that occurred once they arrived at the jobsite on their timesheets. (ECF Nos. 9-2 at ¶ 21, 9-3 at ¶ 21.) Accordingly, they claim that Defendants refused to compensate laborers and foremen for time spent purchasing supplies and materials.

On September 18, 2017, Plaintiffs filed a three-count Complaint alleging failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.,* and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.* ("MWPCL"). (ECF No. 1.) They assert that despite working over forty hours per week, both as reflected on their timesheets and as described above with respect to unrecorded offsite work, Plaintiffs and other similarly situated employees were not always paid time and a half for hours worked over forty. Rather, Defendants either completely denied overtime pay, would only pay overtime rates for some hours worked over forty, or

4

would pay the wrong overtime rate. (ECF Nos. 9-2 at ¶¶ 22-24, 9-3 at ¶¶ 22-24.) On December 12, 2017, Plaintiffs filed the instant Motion for Conditional Certification. (ECF No. 9.)

## STANDARD OF REVIEW

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, "requires employers to pay overtime to covered employees who work more than 40 hours per week." *Encino Motorcars, LLC v. Navarro*, __ U.S. __, 138 S. Ct. 1134, 1138 (2018) (citing 29 U.S.C. § 207(a)). Under the FLSA, a plaintiff may bring an action for violations of the statute on behalf of himself or herself and other employees so long as the other employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b); *see also Quinteros v. Sparkle Cleaning, Inc.,* 532 F. Supp. 2d 762, 771 (D. Md. 2008). Section 216 of the FLSA "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros,* 532 F. Supp. 2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 519 (D. Md. 2000)). Section 216(b) provides, in relevant part, that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Whether to grant conditional certification is left to this Court's discretion. *Syrja v. Westat, Inc.,* 756 F. Supp. 2d 682, 686 (D. Md. 2010) (stating that "[d]eterminations of the

appropriateness of conditional collective action certification . . . are left to the court's discretion"); *see also Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). This Court employs a two-step inquiry when deciding whether to certify a collective action under the FLSA. *Banks v. Wet Dog, Inc.*, No. RDB-13-2294, 2015 WL 433631, at *2 (D. Md. 2015) (citing *Syrja,* 756 F. Supp. 2d at 686); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). In the first stage, sometimes referred to as the "notice stage," this Court "makes a 'threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate.'" *Butler*, 876 F. Supp. 2d at 566 (quoting *Syrja*, 756 F. Supp. 2d at 686). A plaintiff's allegations must consist of "more than 'vague allegations' with 'meager factual support,' but [they] need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 576 (D. Md. 2014) (quoting *Mancia v. Mayflower Textile Services Co.*, No. CCB-08-273, 2008 WL 4735344, at *2 (D. Md. Oct. 14, 2008)). Plaintiffs may rely on "affidavits or other means" to make the required showing. *Butler*, 876 F. Supp. 2d at 566. If, however, "sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright." *Syrja,* 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax Cnty. Pub. Sch.,* 629 F. Supp. 2d 544, 547 (E.D.Va. 2009)).

In the second stage of certification, following the conclusion of discovery, this Court engages in a more stringent inquiry to determine whether the plaintiff class is in fact "similarly situated" in accordance with the requirements of § 216. *Id.* (citing *Dorsey v. TGT*

*Consulting, LLC,* 888 F. Supp. 2d 670, 686 (D. Md. 2012)). This second, more "stringent" phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and thus is referred to as the "decertification stage." *Syrja,* 756 F. Supp. 2d at 686. The court then renders a final decision regarding the propriety of proceeding as a collective action. *Id.*

## ANALYSIS

### A.  Conditional certification

The "paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Williams v. Long,* 585 F. Supp. 2d 679, 684 (D. Md. 2008) (quoting § 216(b)). While Plaintiffs bear the burden of showing that their claims are "similarly situated," courts have ruled that "similarly situated" need not mean "identical." *See, e.g., Gionfriddo v. Jason Zink, LLC,* 769 F. Supp. 2d 880, 886 (D. Md. 2011) (citing *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001)); *Butler,* 876 F. Supp. 2d at 566. This Court has held that a group of FLSA plaintiffs is similarly situated if they can show that they were victims of a common policy, scheme, or plan that violated the law. *Id.* at 566 (citing *Mancia v. Mayflower Textile Servs. Co.,* No. CCB–08–273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008)). However, "a court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require 'substantial individualized determinations for each class member.'" *Syrja,* 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax Cnty. Pub. Sch.,* 629 F. Supp. 2d 544, 547 (E.D.Va. 2009)).

In considering Plaintiffs' Motion, this Court finds *Butler v. DirectSAT USA, LLC,* 876

F. Supp. 2d 560 (D. Md. 2012) instructive. In *Butler*, technicians alleged that their employer encouraged or instructed them to work "off the clock" and to not record overtime on their weekly timesheets in violation of FLSA. 876 F. Supp. 2d. When they moved to conditionally certify a class, the defendants argued in part that conditional certification was inappropriate because the technicians were "dissimilar and warrant[ed] individualized treatment." *Id.* at 570. Specifically, they "highlight[ed] differences in the time periods the[] three individuals worked as technicians, the manner in which they recorded time on their timesheets, and the amount of time and type of tasks they performed 'off the clock.'" *Id.* This Court rejected defendants' arguments, explaining that they "'delve[d] too deeply into the merits of the dispute'" at the first state of conditional certification. *Id.* (citations omitted). Rather, by showing that all technicians at the specific warehouse were subject to the same company policies and procedures with regard to timekeeping and compensation, and that the technicians were not compensated for all of their time because they were instructed to not record "off the clock work" or hours over forty, they had made a modest factual showing that they were subject to a common policy, plan, or scheme that violated FLSA. *Id.* at 568-69.

Two years later, this Court denied the defendants' motion to decertify the class during the second stage of conditional certification. *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300 (D. Md. 2014). Notably, this Court explained that although damages calculations would be relatively difficult because the hourly wages paid to technicians varied from job to job and worker to worker, this fact did not warrant decertification. *Id.* at 309. Second, this Court explained that "the absence of records documenting Plaintiffs' off-the-

clock work is not fatal to the collective" given that "employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by the employees." *Id.* at 309 (citing 29 U.S.C. § 211(c)).

Plaintiffs assert that they and members of the putative class are similarly situated because they performed similarly duties comprising mostly of manual labor, had similar schedules and regularly worked overtime, and were not accurately paid or paid at all for overtime hours actually worked. Defendants argue that Plaintiffs cannot obtain conditional certification because they have not identified a common plan or policy that violated FLSA's overtime provision or met their burden of showing the putative class is similarly situated.

First, Plaintiffs have made the "modest factual showing" that they were a part of a common policy or plan of not being paid overtime in violation of FLSA. Plaintiffs Lee and Taylor, a laborer and a foreman, assert that Defendant Iwuoha, President of JLN, was responsible for all of Defendants' pay practices. (ECF Nos. 9-2 at ¶ 4, 9-4 at ¶ 4.) They assert that those pay practices violated FLSA in two ways. First, they were instructed not to record time spent gathering supplies and materials prior to arriving at a job site.[3] Second, they were not compensated properly for overtime because they were completely denied overtime pay, would only be paid overtime for some hours worked over forty, or would be paid the wrong overtime rate. Accordingly, they have met their burden of showing a common policy, scheme, or plan existed.

Second, Defendants have not shown that substantial individualized determinations

---

[3] To be clear, this Court does not opine at this time whether Plaintiffs and similarly situated employees are in fact entitled to compensation for this time. The Davis-Bacon Act, 40 U.S.C. § 276a(a)(1988), applies prevailing wage requirements to those "employed directly upon the site of the work." *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447 (D.C. Cir. 1994); *see also Barnes v. Comm'r of Labor & Industry*, 45 Md. App. 396, 403 (Md. 1980) (noting that Maryland's prevailing wage laws were patterned after the Federal Davis-Bacon Act).

make conditional certification inappropriate. Defendants assert that "each potential class member's alleged damages would require individual analysis based on the type of construction project and the applicable prevailing wage rate determination for the trade or occupation used on each specific construction project." (ECF No. 14 at 1-2.) Specifically, Defendants assert that the potential class members would be made up of employees who worked on both public projects, subject to prevailing wage laws, and private projects, not subject to such laws, and accordingly wage determinations will require "extensive, individualized analysis."[4] (ECF No. 14 at 8.) As this Court stated in *Syrja v. Westat, Inc.,* 756 F. Supp. 2d 682 (D. Md. 2010), whether to consider concerns regarding manageability "at the notice stage is, like other aspects of the conditional certification analysis, a decision for the Court on the facts before it." 756 F. Supp. 2d at 689.

On the facts of this case, this Court finds Defendants' argument inappropriate at this stage of certification. First, the example Defendants provided of one of Plaintiff Lee's two-week payroll stubs identified his hourly rate. (ECF No. 14 at 10.) Accordingly, it appears that ascertaining the potential putative class members' hourly rates will only require obtaining their pay roll information. Second, Defendants' argument relates to damages and accordingly "delves too deeply into the merits of the dispute." *Butler*, 876 F. Supp. 2d at 570 (citations omitted); *see also Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561 (D. Md. 2014) (explaining that without additional discovery, the possibility that potential class members' hours worked and salaries would vary was not a basis for denying conditional certification);

---

[4] Defendants cite that under Maryland law, "the prevailing wage rate for straight time for a worker is the rate paid: (i) in the locality; (ii) on projects similar to the proposed public work; (iii) for work of the same or a similar character as that to be performed on the public work; and (iv) to 50% or more of the workers in the worker's occupational classification." Md. Code Ann., State Fin. & Proc. § 17-208 (2017). The prevailing wage rate for overtime is then at least time and a half the prevailing wage rate for straight time. *Id.*

*Butler*, 47 F. Supp. 3d (declining to decertify a class even though the class members' hourly wages varied from job to job and worker to worker).

Defendants relatedly argue that a class would be unmanageable because individual inquiries would need to be made to determine whether JLN issued an employee a supplemental check to correct for an inaccurate paycheck and the amount of "off the clock" work an employee performed. These arguments also delve too deeply into the merits of the claims and overlook that Plaintiffs have alleged that Defendants instructed them not to record work spent prior to arriving at a job site and failed to accurately pay them overtime for hours worked over forty. *See Butler*, 876 F. Supp. 2d at 570 ("With declarations and deposition testimony asserting that they were instructed not to record all of their pre- and post-shift work and that they did not regularly receive overtime compensation despite working more than forty hours per week, they have made that showing [that they were victims of a common policy or practice that violated FLSA].""). Further, as this Court explained in *Butler*, "employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by the employees." 47 F. Supp. 3d at 309 (citing 29 U.S.C. § 211(c)). Accordingly, Plaintiffs have made the requisite showing that they and other laborers and foremen were similarly situated and that there is a company-wide policy by JLN regarding their overtime pay.[5]

---

[5] In their response to Plaintiffs' Motion, Defendants summarily assert that "[l]astly, Plaintiff Taylor is not a proper representative of the opt-in plaintiffs because he performed work as a foreman, rather than a laborer, for six of the 12 months he was employed by JLN." (ECF No. 14 at 2 (citing ECF No. 1 at ¶ 22).) Plaintiffs' Motion clearly seeks to certify a conditional class of both laborers and foremen, asserting they performed similar duties and were subject to the same pay practices. Given that Defendants have not offered any reason why this Court should limit the scope of the class to only laborers, as explained in Part B this Court certifies a class of both laborers and foremen.

### B. Definition of the class

For the reasons stated above, Plaintiffs' Motion is GRANTED and this Court will conditionally certify a collective action consisting of laborers and foremen who worked for JLN Construction Services, LLC from September 2014 to May 14, 2018.

### C. Notice Form

Pursuant to the FLSA, a Notice of Collective Action "must provide accurate and timely notice to potential plaintiffs so they may make informed decisions about whether to join a collective action." *Arnold v. Acappella, LLC*, BPG-15-3001, 2016 WL 5454541, at *4 (D. Md. Sept. 29, 2016). However, "[t]he district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Id.* (citing *Mcfeeley v. Jackson St. Entm't, LLC*, DKC 12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 487, 107 L. Ed. 2d 480 (1989). Because Plaintiffs have met their preliminary burden to show that there are other similarly situated employees, notice will be provided to laborers and foremen who worked for JLN Construction Services, LLC from September 2014 to May 14, 2018.

As described in this Court's order, the parties are directed to confer with one another within ten days and submit a Joint Proposed Notice of Collective Action. Further, within fifteen days, JLN is directed to provide Plaintiffs with the names and last known home and email addresses of all collective action members. *See Arnold v. Acappella, LLC*, BPG-15-3001, 2016 WL 5454541, at *4 (D. Md. Sept. 29, 2016) ("This court has recognized that e-mail communication is 'now the norm' and in numerous cases has directed FLSA defendants to produce such information." (quoting *Calder v. GGC-Baltimore, LLC*, No. BPG-12-2350,

12

2013 WL 3441178, at *3 (D. Md. July 8, 2013)); *Mendoza v. Mo's Fisherman Exchange, Inc.*, No. X, 2016 WL 3440007, at *20 (D. Md. June 22, 2016) (only requiring the defendants to provide email addresses because "'communication through email is [now] the norm'" (quoting *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012)).

## CONCLUSION

For the reasons that follow, Plaintiffs' Motion for Conditional Certification to Facilitate Identification and Notification of Similarly Situated Employees (ECF No. 9) is GRANTED. A collective action is conditionally certified to a class consisting of "laborers and foremen who worked for JLN Construction Services, LLC from September 2014 to May 14, 2018.

Dated: May 14, 2018

                                        /s/
                                        _____
                                        Richard D. Bennett
                                        United States District Judge